73032. HALL v. THE STATE.
(349 SE2d 255)

BANKE, Chief Judge.

The appellant appeals his convictions of burglary, rape, and aggravated assault.

The victim, an elderly widow, was beaten, stabbed, and sexually assaulted in her home shortly after midnight on June 24, 1985. At around 7:00 a.m. that morning, her daughter discovered her condition and immediately summoned the police, over the victim's protestations that "she was afraid and didn't want any trouble."

The appellant was arrested two days later for criminal trespass. Upon reading the incident report regarding that arrest, Lieutenant Fiveash of the police department noticed a similarity between the description of the appellant contained in the report and the description the elderly widow had provided of her assailant. He then compared the fingerprints on the appellant's fingerprint card with latent prints which had been lifted from the window through which entry to the widow's house had been gained. Observing a similarity between them, he caused the appellant to be brought to Detective Whitfield's office for questioning.

Detective Whitfield testified that, after he had advised the appel-

lant of his *Miranda* rights and after the appellant had acknowledged that he understood these rights, the appellant admitted going to the victim's residence, entering through a window, lighting matches to find his way through the house, getting into bed with the victim, and beating, stabbing, and raping her. At a *Jackson v. Denno* hearing held to determine the voluntariness of this confession, the appellant maintained that, after his arrest on the criminal trespass charge the previous day, he had told the arresting officer he wanted to talk to a lawyer. He further testified that during his interrogation Detective Whitfield had promised to "talk to the D.A. about seeing me go to a doctor or getting me some help, counselling help or some help as far as in prison" if he would make a statement. The detective, however, denied having made any such promise.

A latent print examiner from the State Crime Laboratory identified the prints lifted from the window of the victim's home as the appellant's, based on a comparison with known prints of the appellant. Also, there was expert testimony that blood found on the appellant's clothing was of the same international blood type and reflected the presence of the same enzymes as the victim's blood. *Held*:

1. The appellant contends that the trial court erred in admitting evidence of his confession because it was not shown to have been made voluntarily, without hope of reward or fear of punishment, and because it was obtained after he had expressed a desire to talk to a lawyer.

The evidence clearly authorized the trial court to conclude that the appellant made the confession voluntarily, after full advisement of his *Miranda* rights. Although the appellant testified that he had been in fear when he made the confession, there was absolutely no evidence to suggest that the police had threatened to harm him if he did not confess. "(T)he hope or fear contemplated by [OCGA § 24-3-50] must be induced by another. A hope or fear which originates in the mind of the person making the confession and which originates from seeds of his own planting would not exclude a confession." *Dickey v. State*, 157 Ga. App. 13 (1) (276 SE2d 75) (1981).

With regard to the alleged promise by the detective to help secure counseling for the appellant when he got to prison, "we conclude that the benefit involved was no 'hope of lighter punishment (induced by one other than the defendant)' (cit.), but was a collateral benefit which does not render a confession inadmissible. OCGA § 24-3-51." *Patrick v. State*, 169 Ga. App. 302 (1) (312 SE2d 385) (1983), aff'd 252 Ga. 509 (314 SE2d 909) (1984). Moreover, the detective denied having made such a promise, and the trial court was certainly authorized to accept his word over the appellant's. See *White v. State*, 168 Ga. App. 794, 797 (310 SE2d 540) (1983).

With regard to the appellant's alleged statement to the arresting

officer immediately after his arrest that he wished to talk to an attorney, there is no indication that the appellant was being interrogated at the time, nor is there any indication that either Detective Whitfield or Lieutenant Fiveash was aware that such a request had been made. Indeed, at the time the alleged request was made, it does not appear that any law enforcement officer even remotely suspected the appellant's involvement in the offenses at issue in this case. Under such circumstances, the appellant's confession cannot reasonably be considered the product of "further interrogation" or "reinterrogation" within the meaning of *Edwards v. Arizona*, 451 U. S. 477, 484-485 (101 SC 1880, 68 LE2d 378) (1981), nor does the conduct of the police otherwise appear to have had "the potential for infringing upon the [appellant's] free exercise of [his] constitutional rights." *White v. State*, supra, 168 Ga. App. at 796. Cf. *Berry v. State*, 254 Ga. 101, 104 (326 SE2d 748) (1985). For these reasons, we hold that the trial court did not err in admitting the confession.

2. The appellant contends that the trial court erred in admitting evidence of a prior rape he had committed some nine years earlier, arguing that such evidence was "overly prejudicial" to him. The evidence in question was undoubtedly prejudicial to the appellant, as was the other evidence of his guilt. However, like such other evidence, it was nevertheless admissible.

There were striking similarities between the prior offense and the offense for which the appellant was on trial. In both instances, the appellant had beaten and sexually assaulted an elderly black woman in her home at night, after gaining access to the home through a window and then finding his way to the bedroom by lighting matches. Thus, there was a logical connection between the two offenses, such that proof of the appellant's involvement in the earlier offense tended to prove his guilt of the offenses for which he was on trial. Accord *Sparks v. State*, 172 Ga. App. 891 (3) (324 SE2d 824) (1984). The fact that nine years had passed since the commission of the prior offense did not sever this connection. "[T]his court has held that a nine-year time span between the prior offense and the one for which the defendant was being tried did not preclude the admission of evidence of the prior offense if such evidence would be otherwise admissible. *Miller v. State*, 165 Ga. App. 487 (299 SE2d 174) (1983)." *Sparks v. State*, supra, 172 Ga. App. at 893.

3. The evidence was amply sufficient to enable a rational trier of fact to find the appellant guilty beyond a reasonable doubt of each of the three offenses of which he was convicted. See generally *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Birdsong, P. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 19, 1986.

*Susan C. Janowski*, for appellant.

*Harry D. Dixon, Jr., District Attorney, Richard E. Currie, Assistant District Attorney*, for appellee.