## S10A1710. SAMUELS v. THE STATE.

(701 SE2d 172)

THOMPSON, Justice.

Dannie Lee Samuels, Jr., was convicted of malice murder, rape, and related offenses in connection with the beating and strangulation death of Barbara Hefner, his supervisor at work.[1] Samuels appeals from the denial of his motion for new trial, asserting that the trial court erred in admitting his custodial statement into evidence. Finding no error, we affirm.

After the victim failed to show up for a prearranged appointment with a friend, police were called to her residence. They found the victim's bedroom in disarray and blood stains present on the floor, bedding and items of her clothing. The victim's body was found later that day partially submerged in a local lake. The cause of death was manual strangulation along with blunt force trauma to the head, chest and extremities. Forensic evidence also established vaginal and anal injuries consistent with forcible and violent penetration.

Vaginal swabs taken from the body were tested for DNA, and the results were run through the DNA computer index system. When a match for Samuels' DNA was found, he was arrested and taken to the GBI office. After receiving *Miranda* warnings, Samuels executed a waiver of rights and agreed to speak with the investigating officers. He subsequently confessed that he raped and killed the victim, dragged her body from her home, and left it at the lake.

1. The evidence was sufficient for a rational trier of fact to have found Samuels guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

---

[1] The crimes were committed on March 6, 2004. A multi-count indictment was returned on June 12, 2006, charging Samuels with malice murder, felony murder in the commission of an aggravated assault, aggravated assault, rape, aggravated sodomy, aggravated battery, and concealing a death. The indictment also alleged the existence of multiple statutory aggravating circumstances with regard to the charges of malice murder, felony murder, and rape. The State filed notice of intent to seek the death penalty. Thereafter, Samuels signed a written agreement that in exchange for his waiver of the right to trial by jury, the State would remove the death penalty as a sentencing option. A bench trial commenced on August 17, 2009. At the conclusion of the guilt-innocence phase the court found Samuels guilty of all charges. After hearing evidence in the sentencing phase, the court found the existence of three statutory aggravating circumstances with regard to each of the crimes of malice murder, felony murder and rape. Samuels was sentenced on August 20, 2009 to life imprisonment without possibility of parole for malice murder, life imprisonment with parole for rape, 15-year terms for aggravated sodomy and aggravated battery, and a 10-year term for concealing a death. The felony murder and aggravated assault convictions were vacated by operation of law and merged under *Malcolm v. State*, 263 Ga. 369, 371 (4) (434 SE2d 479) (1993). A motion for new trial was filed on September 10, 2009, amended on March 26, 2010, and denied on June 10, 2010. A notice of appeal was filed on June 21, 2010. The case was docketed in the September 2010 term of this Court, and was submitted for a decision on briefs on August 30, 2010.

2. Samuels asserts that the trial court erred in admitting his custodial statement into evidence because it was induced by a hope of benefit, rendering the statement involuntary and inadmissible.

During a *Jackson v. Denno* hearing, the trial court heard evidence from three law enforcement officers who were involved in Samuels' arrest and custodial interview. It was established that a warrant issued for Samuels' arrest after his DNA was identified at the scene. He was arrested at work, informed of the results of the DNA testing, and taken to the GBI office in Thomson, Georgia, where he received *Miranda* warnings and executed a written waiver of rights in the presence of GBI Agent Parker and McDuffie County Sheriff Marshall. Initially, Samuels denied that he had ever been in the victim's home or his involvement in the crimes.

Officer Theodore Jackson, Samuels' second cousin, entered the interview room and asked Samuels whether he understood the significance of the presence of his DNA at the crime scene. Samuels replied that he did, and the officer told him if you did something you must tell the truth. Samuels asked for a cigarette, and he and Jackson walked outside for that purpose. At that point, Samuels admitted that he had been at the victim's home. He claimed they had consensual sex, but that afterwards she became angry, they struggled, and he choked her. The officer reiterated that Samuels must tell the truth. He then returned Samuels to the interview room where Sheriff Marshall and Agent Parker took his recorded statement in which he admitted killing the victim and leaving her body at the lake.

Sheriff Marshall denied making any promises to Samuels with regard to the impending charges or punishment. The sheriff did suggest that if Samuels was truthful he might stand a better chance of working out a plea bargain, and that he would be willing at some point to talk to the district attorney about the situation. The sheriff also acknowledged that he advised Samuels about the charges he could be facing, including the possibility that the State could seek the death penalty. Agent Parker likewise testified that nothing was promised in exchange for Samuels' statement. Samuels offered no counter-evidence.

In determining the admissibility of a custodial statement during a *Jackson v. Denno* hearing, the trial court must consider the "totality of the circumstances" and apply a "preponderance of the evidence" standard. *Fowler v. State*, 246 Ga. 256, 258 (3) (271 SE2d 168) (1980). The court's decision on admissibility will be upheld on appeal unless "the factual and credibility findings of the trial court are 'clearly erroneous.' " Id.

To render a confession admissible under Georgia law, " 'it must have been made voluntarily, without being induced by another by the

slightest hope of benefit or remotest fear of injury.' " *Taylor v. State,* 274 Ga. 269, 273 (2) (553 SE2d 598) (2001).

> "(W)e have construed the 'slightest hope of benefit' as meaning the hope of a lighter sentence. (Cit.)" [Cit.] Merely telling a defendant that his or her cooperation will be made known to the prosecution does not constitute the "hope of benefit" sufficient to render a statement inadmissible under OCGA § 24-3-50.

*Arline v. State,* 264 Ga. 843 (2) (452 SE2d 115) (1995). See also *Taylor,* supra at 273 (2) ("not improper for the police to encourage a suspect to help herself by telling the truth"). Nor does it "render a statement involuntary for the police to tell a suspect that the trial judge may consider her truthful cooperation with the police." Id. Similarly, Sheriff Marshall's suggestion that he may at some point be willing to talk to the district attorney did not constitute a reward of a lighter sentence, and did not taint the voluntariness of Samuels' statement. It follows that the trial court did not err in admitting Samuels' statement into evidence.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 18, 2010.

*Sara E. Meyers,* for appellant.
*Dennis C. Sanders, District Attorney, Durwood R. Davis, Kevin R. Majeska, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason C. Fisher, Assistant Attorney General,* for appellee.